724 F.Supp. 59 (1989)
Bart RITCHIE and Madelyne Ritchie, Plaintiffs,
v.
William GRIMM and Theodore F. Eicher, Defendants.
No. CV 89-1580.
United States District Court, E.D. New York.
November 6, 1989.
*60 DeCaro & Kaplen by Michael V. Kaplen, New York City, for plaintiffs.
McDonald, Herbermann & Fenzel by Joseph B. McDonald, New York City, for defendant Grimm.
Sidney Holzer, Huntington, N.Y., for defendant Eicher.

MEMORANDUM AND ORDER
WEXLER, District Judge.
In this lawsuit plaintiffs seek compensation for injuries allegedly sustained by Bart Ritchie ("Ritchie") while he was employed on a commercial fishing vessel. Presently before the Court is Ritchie's request for maintenance and cure payments. For the reasons set forth below, defendant Grimm is ordered to pay all medical bills that have been incurred in connection with Ritchie's accident. Maintenance payments in the amount of $381 per week must also be paid to Ritchie. Finally, plaintiff's counsel is awarded $5,000 in attorneys fees.

I. Background

As noted above, Ritchie seeks compensation for injuries sustained while working aboard a commercial fishing vessel. The owner of that vessel, Ritchie's employer, was defendant William Grimm ("Grimm"). Plaintiffs' testimony revealed that immediately following the accident, Grimm's insurer began making payments of $555 per week to plaintiffs. One hundred and five dollars of this amount was designated as a maintenance payment while the remainder was designated to be a "disability" payment. In addition, all of Ritchie's medical bills were promptly paid. Unfortunately, according to the Ritchies, these payments did not continue. Medical bills went unpaid and maintenance payments were cut. According to plaintiffs, the payments to Ritchie lagged when plaintiffs commenced this lawsuit. Ultimately, the non-payment of medical and maintenance payments led plaintiffs to bring an order to show cause aimed at amending their complaint to add a cause of action for maintenance and cure and seeking an immediate trial on those issues.
On October 30, 1989 this Court held a hearing to determine the merits of plaintiffs' claim. At the hearing defense counsel repeatedly assured the Court that all medical expenses incurred by Ritchie would be paid by Grimm. While counsel's concession mooted the issue of cure, the issue of the proper maintenance was hotly debated. According to Grimm, maintenance payments are to be calculated solely with reference to the seaman's accommodations while at sea. Thus, Grimm argues that Ritchie's actual living expenses while recuperating at home with his wife and son are irrelevant to the issue of the proper amount of maintenance. Plaintiffs argue, on the other hand, that the proper amount of maintenance is to be calculated solely *61 with reference to plaintiffs actual living expenses including such items as the cost of day care for plaintiffs' son and meals eaten by Ritchie's wife while visiting Ritchie in the hospital.

II. Maintenance

Although the law of the proper amount of maintenance an injured seaman may collect is anything but crystal clear, the Court holds that the proper application of the law falls somewhere between the parties' contentions.
The law of maintenance is of ancient origin. One Court has traced the law back to the ancient Laws of Oleron, a code of maritime law published in the twelfth century. According to ancient law, when "sickness seizes on any one of the mariners, while in the service of the ship, the master ought to set him ashore, to provide lodging and candlelight for him, and also spare him one of the ship-boys, or hire a woman to attend him...." Article VII of the Laws of Oleron quoted in McWilliams v. Texaco, Inc., 781 F.2d 514, 517 n. 7 (5th Cir.1986).
Although the Laws of Oleron state that a seaman is entitled only to "so much as he had on shipboard in his health," id, modern day Courts have not hesitated to award seamen their actual living expenses while on shore. For example, in Incandela v. American Dredging Corp., 659 F.2d 11 (2d Cir.1981), the Court of Appeals for the Second Circuit awarded an injured seaman maintenance payments sufficient to cover the cost of his actual living expenses on shore. There, the Court noted that a seaman makes out a "prima facie case on the maintenance rate question when he proves the actual living expenditures which he found it necessary to incur during his convalescence." Id. at 14.
Grimm relies heavily on Harper v. Zapata Off-Shore Co., 741 F.2d 87 (5th Cir. 1984), in support of the claim that an injured seaman's maintenance payments may not include the cost of lodging for the seaman's wife and child. Grimm, however, reads too much into Harper. There, the Court held only that the jury's award of maintenance payments could not be upheld because no record evidence supported the claim that any expenses were incurred. See Harper, 741 F.2d at 91. For similar reasons the Court rejects Grimm's reliance on Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 (1948). That case, like Zapata, held only that no maintenance payments were owed where no lodging costs were incurred.
Here, as in Incandela, the Court notes that Ritchie, like the seaman in Incandela, made out a prima facie case when he and his wife testified as to the actual costs of such items as food and rent. Having done so, the burden shifted to Grimm to produce some evidence in rebuttal. On this issue, however, Grimm produced neither a single witness nor document. Under these circumstances, the Court might be justified in awarding plaintiffs the full amount requested an amount in excess of $600 per week. In the Court's view, however, the making of such an award would stretch the law of maintenance to a point that does not appear to be warranted by the Second Circuit opinion in Incandela. Instead, the Court holds that the proper amount of maintenance should include the total cost of rent for Ritchie's apartment as well as his share of food and other costs testified to at the October 30 hearing. Specifically, the Court holds that Ritchie is entitled to receive $125 per week for rent,[1] $47 per week for food (Ritchie's share of the weekly food expenses) and $209 per week for other expenses (Ritchie's share of all other expenses testified to). See Macedo v. F/V Paul & Michelle, 868 F.2d 519, 522 (1st Cir.1989) (maintenance payments should not include expenses attributable to seaman's family). Thus, the total amount of *62 maintenance to which Ritchie is entitled is fixed at $381 per week.

III. Attorney's Fees

Plaintiffs claim that Grimm's conduct was so callous as to entitle them to counsel fees and punitive damages. Although the Court agrees that an award of counsel fees is appropriate, the Court notes that punitive damages are not available in a maintenance action. See Kraljic v. Berman Enterprises, Inc., 575 F.2d 412, 416 (2d Cir.1978).
Counsel fees are available in a maintenance case only where the employer was "callous" or "recalcitrant." Incandela, 659 F.2d at 15, quoting Roberts v. S.S. Argentina, 359 F.2d 430 (2d Cir.1966). Although Grimm paid Ritchie maintenance immediately following the accident, those payments stopped as did the payment of Ritchie's medical bills. The interruption of the payments coincided with the filing of this lawsuit and payments were not reinstated until plaintiffs brought an order to show cause. Under these circumstances, the Court holds that an award of reasonable counsel fees is warranted. See Incandela, 659 F.2d at 15 (necessity of bringing suit to recover maintenance payments warrants award of counsel fees).
Plaintiffs' attorney claims to have spent fifty hours working on this case. He also claims that his normal billing rate is $200 per hour. When considering the difficulty of the issues presented, the Court holds that it is reasonable to award plaintiffs' counsel a fee of $100 per hour for the fifty hours worked. Accordingly, plaintiffs' counsel is awarded a fee of $5,000.

CONCLUSION
As recognized on the record of the October 30, 1989 hearing, defendant Grimm must pay all of Bart Ritchie's medical expenses. In addition, Grimm is ordered to make maintenance payments of $381 per week to Ritchie. Finally, plaintiffs' counsel is awarded an attorney's fee in the amount of $5,000.
SO ORDERED.
NOTES
[1] The payment of $125 is based upon the $500 monthly rental payment testified to by Mrs. Ritchie. Although the Court notes that Ritchie resides in the apartment with his wife and child, the Court holds that it is reasonable to award Ritchie the full monthly payment since it is likely that Ritchie would pay the same amount in rent even if he alone resided in the apartment.