925 F.2d 721
 1991 A.M.C. 1802
 Daniel C. WILLIAMS, Plaintiff-Appellant,
v.
KINGSTON SHIPPING COMPANY, INC., a New York Corporation,
Defendant-Appellee,
and
Apex Marine Corporation, a New York Corporation; Avon
Steamship Company, Inc., a New York Corporation, Defendants.
 No. 89-2188.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 4, 1990.
Decided Feb. 7, 1991.
As Amended Feb. 26, 1991.
 
 James Joseph Nolan, Jr., Pierson, Pierson & Nolan, Baltimore, Md., for plaintiff-appellant.
 Peter Joseph McNamara, Ober, Kaler, Grimes & Shriver, Baltimore, Md. (argued) (Richard R. Jackson, Jr., Ober, Kaler, Grimes & Shriver, Baltimore, Md., on the brief), for defendant-appellee.
 Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Daniel C. Williams, a seaman, appeals a district court order granting Kingston Shipping Company's motion to reduce the attorney's fees previously awarded to Williams following his successful suit against Kingston for maintenance and cure. The district court initially awarded Williams an attorney's fee in the amount of $49,104. However, in response to Kingston's motion under Federal Rule of Civil Procedure 59(e), the district court reduced the fee by 75%, awarding a fee of $12,276. Because we believe that the district court's first allowance was correct and the second allowance was based on a faulty legal premise, we vacate the judgment and remand the case with directions to reinstate the first allowance.
 
 
 2
 * Williams served on the S.S. CAPRICORN, an oil tanker owned by Kingston. He suffered injuries inflicted by a shipmate. Kingston failed to provide maintenance and cure to Williams as required by maritime law, and Williams filed suit. He alleged four claims: count 1, negligence based on the Jones Act; count 2, a Jones Act claim based on respondeat superior; count 3, unseaworthiness; count 4, failure to pay maintenance and cure under general maritime law.
 
 
 3
 The district court granted Kingston summary judgment on the Jones Act claims because they were filed after the expiration of the statute of limitations. The remaining claims were heard by a jury, which found that Kingston had willfully and arbitrarily refused to pay maintenance and cure and its refusal aggravated Williams's illness, leaving him permanently disabled. The jury awarded him $162,088, of which $150,000 was damages for aggravation. Kingston prevailed on the unseaworthiness claim. On appeal, we upheld the summary judgment and the final order which the district court entered on the verdict. Williams v. Kingston Shipping Co., 859 F.2d 151 (4th Cir.1988) (unpublished).
 
 
 4
 In the present appeal, Williams seeks an attorney's fee of $67,487.86, representing one-third of his recovery plus interest in accordance with the contingency fee contract he made with his attorney. Alternatively, he seeks reinstatement of the judgment awarding a fee of $49,104. Kingston argues that the district court "did not abuse its discretion in awarding Williams $12,276 as reasonable attorney's fees in collecting maintenance and cure awards totaling $12,088."
 
 II
 
 5
 Maintenance and cure provide a seaman who becomes ill or injured in the service of his ship lodging, board, and medical expenses until he reaches maximum recovery. The shipowner's willful, arbitrary failure to pay maintenance and cure gives rise to damages that include a reasonable attorney's fee. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).
 
 
 6
 Contrary to the position asserted by Kingston, a lawyer's services in pursuing a complete remedy for a wrongful denial of maintenance and cure is not limited simply to the collection of funds for lodging, board, and medical expenses. "[F]ailure to give maintenance and cure may give rise to a claim for damages for the suffering and for the physical handicap which follows." Vaughan, 369 U.S. at 530, 82 S.Ct. at 999. In Cortes v. Baltimore Insular Line, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932), the Court said: "If the failure to give maintenance and cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him, the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt."
 
 
 7
 A text summarizes the precepts of Vaughan and Cortes as follows:
 
 
 8
 The penalties for arbitrary or capricious failure to pay maintenance are money damages for any prolongation or aggravation of the physical injury suffered by the seaman; and for expenses incurred by the injured seaman; and for expenses incurred by the injured seaman to hire a lawyer to prosecute his claim for maintenance.
 
 
 9
 1B Benedict on Admiralty Sec. 54, 4-92 (7th ed. 1989) (derived from jury instructions furnished by Judge Alvin B. Rubin of the Fifth Circuit).
 
 III
 
 10
 There is precedent in this circuit for awarding reasonable attorney's fees for successfully prosecuting a claim for maintenance and cure by giving effect to the contingent fee agreement without an analysis of the hours counsel spent on the case. For example, on remand of Vaughan, the contingent fee contract stipulated fees of 50%. The district court, reviewing all aspects of the case, determined that a fee of 45% was fair and reasonable and assessed the fee as damages. Vaughan v. Atkinson, 206 F.Supp. 575, 579 (E.D.Va.1962); accord Jordan v. Norfolk Dredging Co., 223 F.Supp. 79, 83 (E.D.Va.1963) (33 1/3% of recovery); see also Hurte v. Socony-Mobil Oil Co., 221 F.Supp. 885, 889-90 (E.D.Mo.1963) (33 1/3% of recovery).
 
 
 11
 Nevertheless, we reject Williams's contention that the district court erred by not awarding him a fee of 33 1/3% of his recovery on the basis of his contingent fee contract. The key to the attorney's fee component of a maintenance and cure award is reasonableness. Strictly speaking, the fee award in admiralty is an element of damage whose source is judicial precedent, not a fee-shifting statute. Fee-shifting statutes, however, also mandate that the award be reasonable. See, e.g., 42 U.S.C. Sec. 1988 (awards in civil rights cases). Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), prescribes as the starting point for determining a reasonable fee in civil rights cases, the number of hours reasonably expended, multiplied by a reasonable hourly rate. This method of determining a fee has become known as the lodestar approach. The principles for determining a reasonable fee in civil rights cases are therefore appropriate for determining a reasonable fee in admiralty. The result is likely to reflect more precisely than a contingency fee the nature and extent of counsel's services. See Blanchard v. Bergeron, 489 U.S. 87, 91-96, 109 S.Ct. 939, 943-46, 103 L.Ed.2d 67 (1989).
 
 
 12
 We conclude that the district court prudently exercised its discretion by following the method prescribed for awarding fees in civil rights cases instead of relying on the percentage stipulated by the parties as a contingent fee. See Morales v. Garijak, Inc., 829 F.2d 1355, 1361 (5th Cir.1987) (dictum recommending lodestar approach for setting fees in maintenance and cure cases).
 
 IV
 
 13
 After the district court rejected Williams's 33 1/3% fee application, his counsel submitted time sheets consisting of ten single-spaced, typed pages showing the hours four lawyers worked on the case. The time sheets included services performed in connection with Kingston's appeal and Williams's cross appeal. The entries, however, do not clearly differentiate the work done on each count or cause of action alleged in the complaint. Applying the lodestar formula, Williams asked for a fee of $56,727 based on 515.7 hours multiplied by an hourly rate of $110.
 
 
 14
 The district court carefully scrutinized Williams's lodestar application for $56,727 and Kingston's objections. The court properly rejected Kingston's argument that the award could not compensate for services performed in securing damages for aggravation. See Vaughan, 369 U.S. at 530, 82 S.Ct. at 999; Cortes, 287 U.S. at 371, 53 S.Ct. at 174. The court also properly recognized that no fee should be allowed for work exclusively devoted to the two Jones Act claims and the unseaworthy claim. See Vaughan v. Atkinson, 206 F.Supp. 575, 578 (E.D.Va.1962). The court stated that it would consider the fact that Williams was successful in only one out of his four claims "as a factor in the fee ultimately awarded." Accordingly, it struck 25.3 hours "in an attempt to reconcile the fact that plaintiff prevailed on only one-half of the claims that eventually went to trial." The district court also struck 7.9 hours for appeal work. Again the district court was on sound ground. See Hensley, 461 U.S. at 434-37, 103 S.Ct. at 1939-41. The Court also noted that "the unsuccessful claims are inseparable from the successful ones. The court holds this belief in the light of reality."
 
 
 15
 The district court was familiar with the issues in this case and how they were presented. A central issue common to all four causes of action was whether Williams was guilty of willful misconduct. Was he the victim or the willful instigator of the fight? The preparation for trial and the proof on this issue were the same for all four counts. Williams's conduct was submitted to the jury under the unseaworthy count and the maintenance and cure count. Also, the proof of damages would have differed little under the several causes of action. Even Williams's delay in bringing suit resulting in dismissal of the two Jones Act counts overlapped with the maintenance and cure count because Kingston pleaded laches as well as the statute of limitations. Generally injured seamen sue under the Jones Act, the doctrine of unseaworthiness, and for maintenance and cure. See G. Gilmore & C. Black, The Law of Admiralty 383 (2d ed. 1975). When damages for aggravation are an issue, the seamen seek essentially the same remedy--special and compensatory damages. The district court's observation about the reality of the litigation was well founded.
 
 
 16
 The district court substantially reduced Williams's fee application. It decreased the hourly rate of one attorney by $10 and eliminated the fee sought for the services of another attorney. For various reasons, the court reduced the number of hours allowed by 66.8. It allowed a fee of $49,104; this was $7,623 less than Williams claimed under the lodestar approach. The fact that Williams's counsel did not clearly indicate which counts they were working on was improper and undoubtedly hampered the district court. Nevertheless, the omission was not fatal to the fee application. A court may attempt to identify specific hours that should be limited, or it may simply reduce the award to account for the limited success. "The court necessarily has discretion in making this equitable adjustment." Hensley, 461 U.S. at 436-37, 103 S.Ct. at 1941.
 
 
 17
 The court painstakingly determined a reasonable fee. Although one may question whether fewer or more hours should have been taken into consideration in the equation, we detect no error in the district court's factual findings. The Supreme Court recognized in Hensley, 461 U.S. at 437, 103 S.Ct. at 1941, that a district court has discretion in determining the amount of a fee. By awarding $49,104, the district court did not abuse its discretion.
 
 V
 
 18
 In a Rule 59(e) motion, Kingston persuaded the district court to amend the fee allowance by reducing it 75% because Williams prevailed on only one out of four counts in his complaint. The resulting fee of $12,276 became the final award and the subject of Williams's appeal.
 
 
 19
 Although a district court's discretion in awarding a fee is entitled to great deference by an appellate court, an error of law is not insulated. Here it was an error of law that induced the district court to grant Kingston's motion to amend the fee award. The district court mistakenly conceded it was in error when it had previously considered that "all the claims in this case were intertwined." It then held that since Williams prevailed on only one of the four claims the fee should be only one-fourth of the fee that it had previously deemed reasonable when it took into consideration all four claims.
 
 
 20
 The court's reason for reducing its initial award by 75% is based on the faulty legal premise that the claims are not "intertwined." The Supreme Court has long recognized that a seaman's claims against a shipowner for injury overlap:
 
 
 21
 While the seaman was still alive, his cause of action for personal injury created by the statute may have overlapped his cause of action for breach of the maritime duty of maintenance and cure, just as it may have overlapped his cause of action for injury caused through an unseaworthy ship. In such circumstances it was his privilege, in so far as the causes of action covered the same ground, to sue indifferently on any one of them.
 
 
 22
 Cortes v. Baltimore Insular Line, 287 U.S. 367, 374-75, 53 S.Ct. 173, 175-76, 77 L.Ed. 368 (1932) (citations omitted).
 
 
 23
 Jones Act and unseaworthiness claims "derive from the same accident and look toward the same recovery." G. Gilmore & C. Black, The Law of Admiralty, at 383. Those claims also often overlap maintenance and cure claims. For example, in Gespard v. Taylor Diving & Salvage Co., 649 F.2d 372 (5th Cir.1981), a verdict of $45,000 for negligence, $8,760 for maintenance and cure, and $296,240 for arbitrarily failing to pay maintenance and cure was upheld on appeal. The court observed that the failure to pay maintenance and cure could have aggravated the injuries and the recovery of $296,240 for this item could have been awarded under either the negligence count or the maintenance and cure count. 649 F.2d at 375-76. Moreover, if a seaman recovers lost wages and medical expenses as maintenance and cure, "he cannot additionally obtain reimbursement for such expenses and loss by a negligence claim." 1B Benedict on Admiralty Sec. 51, at 4-73 (7th ed. 1989).
 
 
 24
 The district court's final judgment also rests on a factually faulty premise. In its initial award the court stated that it would consider the fact that Williams prevailed in only 25% of his overall complaint as a factor in considering an ultimate fee. Having done so, it should not again have reduced the fee by allowing only 25% of its initial determination. This double reduction compounds the court's error in its second fee award.
 
 VI
 
 25
 Speaking of claims that involve "a common core of facts" or "related legal theories," the Supreme Court set forth the following principles:
 
 
 26
 Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claimby-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
 
 
 27
 Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.
 
 
 28
 Hensley, 461 U.S. at 435, 103 S.Ct. at 1940 (citation omitted).
 
 
 29
 With some modifications the district court followed these principles in making its initial award. Rightly, it looked to the result, which was excellent. Unfortunately, it jettisoned these principles in its second award. Indeed, the Supreme Court has criticized the mathematical formula that the district court used in its second award.
 
 
 30
 We agree with the District Court's rejection of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.
 
 
 31
 Hensley, 461 U.S. at 435-36 n. 11, 103 S.Ct. at 1940-41 n. 11 (citation omitted).
 
 VII
 
 32
 In summary, we recognize that Williams cannot recover a fee for work devoted to the negligence and unseaworthy claims. The district court adequately addressed this when it struck 25.3 hours for trial preparation and 7.9 hours for work on the appeal. Williams, however, can recover a fee for the successful prosecution on his maintenance and cure claim. Presentation of this claim included the work necessary to show that his damages were aggravated by Kingston's failure to provide maintenance and cure.
 
 
 33
 Ordinarily we would vacate the judgment and remand the case to enable the district court to determine a proper fee. But the district court already did this by its initial order. A remand could produce no significant change in the fee allowed in the first award. The case has been pending since 1983, and it has been the subject of two appeals. Litigation over the fees should not be prolonged. Hensley, 461 U.S. at 437, 103 S.Ct. at 1941. We therefore vacate the final fee award of $12,276 and remand the case with directions to reinstate the initial award of $49,104. Williams shall recover his costs. The district court should also consider allowance of an additional fee for counsel's services on this appeal.
 
 
 34
 VACATED AND REMANDED.
 
 WILKINSON, Circuit Judge, dissenting:
 
 35
 Because the majority acts without statutory authorization to expand fee-shifting in personal injury actions brought by seamen, I respectfully dissent.
 
 
 36
 In Vaughan v. Atkinson, the Supreme Court established common law fee-shifting in successful admiralty claims for maintenance and cure where the defendant's actions in denying the same are found to be "willful and persistent." 369 U.S. 527, 531, 82 S.Ct. 997, 999-1000, 8 L.Ed.2d 88 (1962). That decision judicially created a limited exception to the usual "American Rule" that each party to a legal proceeding "ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). Because the fee-shifting in Vaughan was judicially created rather than authorized by statute, it must be narrowly construed. Alyeska Pipeline Service Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). "[I]t would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation...." Id. at 247, 95 S.Ct. at 1616.
 
 
 37
 The majority disregards that principle. It appears to recognize the limitations of Vaughan as a rationale for fee-shifting when it states that the district court "properly recognized that no fee should be allowed for work exclusively devoted to the two Jones Act claims and the unseaworthy claim." Op. at 724. However, by appropriating for use here a body of law that was developed under a quite different statutory scheme, the majority effectively ignores its own analysis.
 
 
 38
 The standards and rules developed in the context of the civil rights statutes cannot be imported uncritically into maritime law. Vaughan authorizes the award of "necessary expenses" only when they are incurred in opposition to certain egregious failures to pay maintenance and cure. 369 U.S. at 530, 82 S.Ct. at 999. The holding does not authorize the awarding of attorney fees for an entire case, which here included claims of statutory negligence and unseaworthiness in addition to that for maintenance and cure. See Vaughan v. Atkinson, 206 F.Supp. 575, 578 (E.D.Va.1962) (on remand); see also Domar Ocean Transp. Ltd. v. Independent Refining Co., 783 F.2d 1185, 1191 (5th Cir.1986) (attorneys' fees incidental to a direct maritime tort action are not recoverable). Vaughan thus stands in sharp contrast to 42 U.S.C. Sec. 1988, which provides for the award of a reasonable attorney's fee to "the prevailing party" in a qualifying civil rights "action or proceeding." Much of the legal controversy under that statute concerns how to define a prevailing party and how to relate the results obtained to the amount of a fee award when a plaintiff asserts many claims and succeeds on only some of them.
 
 
 39
 Fee awards to a prevailing party under Sec. 1988 have no relevance to this case where fee-shifting is only authorized for a single claim, that for maintenance and cure. The majority's inquiry here into how Williams's many claims might be "intertwined" for purposes of awarding attorneys' fees has no foundation either in statute or case law. Vaughan does not allow Williams to avoid the American Rule with respect to his tort and unseaworthiness claims simply by joining them with his claim for maintenance and cure.
 
 
 40
 The majority compounds its error by holding that the district court abused its discretion in awarding $12,276 in legal fees. I believe, to the contrary, that the trial court was correct.
 
 
 41
 The district court initially calculated what it considered to be an appropriate legal fee for the case as a whole by examining the reasonableness of the charges. For example, the court struck 23.20 claimed hours because no adequate explanation was given for staffing the case at trial with two attorneys rather than one; it also struck 7.9 hours of appeal work. The court trimmed the requested fee of $56,727 by a relatively small amount. The $49,104 result clearly represented what the district court believed was an appropriate fee for the entire case, including work performed on the three unsuccessful claims as well as maintenance and cure.*
 
 
 42
 The court revisited its award after correctly ruling that Williams was entitled to recover fees only for the maintenance and cure claim and not for the case as a whole. It then faced the difficulty of calculating an appropriate portion of the $49,104. The burden was on Williams to provide adequate documentation of the work that was sufficiently detailed to "enable a reviewing court to identify distinct claims." Hensley, 461 U.S. at 437, 103 S.Ct. at 1941; see Daly v. Hill, 790 F.2d 1071, 1079-80 (4th Cir.1986). He did not carry that burden. His attorneys submitted time sheets that failed to differentiate clearly the work done on each count or cause of action. The majority itself recognizes that "[t]he fact that Williams's counsel did not clearly indicate which counts they were working on was improper and undoubtedly hampered the district court." Op. at 724. Given the attorneys' failure to separate hours, the trial court simply divided the fee for the case as a whole by the number of claims in order to approximate the appropriate fee for the single maintenance and cure claim. Any imprecision in that approach was due solely to Williams's failure to carry his burden of proof. We should overturn the district court's decision only upon an abuse of discretion, Hensley, 461 U.S. at 437, 103 S.Ct. at 1941, and no such abuse is present here.
 
 
 43
 The majority nevertheless overrides the district court's sound discretion and declares that Williams should be awarded $49,104 in legal fees. Because that conclusion is the result of fee-shifting without an authorizing statute, I respectfully dissent.
 
 
 
 *
 The majority claims in Part VII of its opinion that the district court "adequately addressed" work devoted to the negligence and unseaworthy claims by cutting 25.3 hours of trial preparation. The record makes clear, however, that the court denied those hours because they were unreasonable, and not because it was attempting to exclude all hours devoted to claims other than maintenance and cure. Indeed, the court specifically noted that such action did "not mean that just because counsel did not prove this fact [of unseaworthiness] by a preponderance of the evidence the time expended on that effort was unreasonable." It simply cannot be that every hour the district court believed to be reasonable in the case as a whole can be attributed to the maintenance and cure claim, as the majority attempts to do